486 So.2d 530 (1986)
Pamela MARRERO, Petitioner,
v.
Malcolm G. GOLDSMITH, M.D., et al., Respondents.
No. 65400.
Supreme Court of Florida.
January 23, 1986.
Rehearings Denied May 5, 1986.
*531 Edward A. Perse, of Horton, Perse and Ginsberg, and Alldredge and Gray, Miami, for petitioner.
Robert M. Klein, of Stephens, Lynn, Chernay and Klein, Miami, for Malcolm G. Goldsmith, M.D.
John Edward Herndon, Jr., of Thornton and Herndon, P.A., Miami, for William Brewster, M.D.
Evan J. Langbein, of Evan J. Langbein, and Alan E. Greenfield, P.A., Miami, for Constantine Kitsos, M.D.
SHAW, Justice.
This medical malpractice action, Marrero v. Goldsmith, 448 So.2d 543 (Fla. 3d DCA 1984), is before us due to express and direct conflict with South Florida Hospital Corp. v. McCrea, 118 So.2d 25 (Fla. 1960). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
Plaintiff underwent surgery with Dr. Brewster administering general anesthesia, Dr. Goldsmith performing a hemorrhoidectomy, followed by Dr. Kitsos performing an abdominal dermolipectomy and removing a cyst from her eyelid. Following surgery plaintiff complained of numbness, weakness and pain in her left arm, which was diagnosed as bracial plexapathy. She sued the three doctors and the hospital for damages. She produced expert medical testimony that this type of injury is one that ordinarily does not occur in the absence of negligence and that it was probably caused by incorrect arm positioning during surgery. The doctors testified that they knew of nothing unusual happening during the surgery. Plaintiff's requested jury instruction on res ipsa loquitur was denied by the trial court. The hospital settled before submission of the issue of its liability to the jury and the jury found no liability on the part of the doctors.
The district court affirmed, stating that res ipsa loquitur was inapplicable because the plaintiff presented expert testimony regarding the defendants' alleged negligence. It cited this Court's decision in Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339 (Fla. 1978), as precluding a res ipsa instruction unless direct proof of negligence is wanting.
Res ipsa loquitur is a Latin phrase that translates "the thing speaks for itself." Prosser and Keaton, Law of Torts § 39 (5th ed. 1984). It is a rule of evidence that permits, but does not compel, an inference of negligence under certain circumstances. "[T]he doctrine of res ipsa loquitur is merely a rule of evidence. Under it an inference may arise in aid of the proof." Yarbrough v. Ball U-Drive System, Inc., 48 So.2d 82, 83 (Fla. 1950). In Goodyear, a products liability case, we explained the doctrine as follows:
It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.
Goodyear, 358 So.2d at 1341-42, (footnotes omitted).
In finding res ipsa loquitur inapplicable, the Court in Goodyear relied on three factors: 1) there was sufficient direct evidence of negligence available to the extent that "the facts surrounding the incident were discoverable and provable"; 2) the occurrences of tire blowouts after the tires *532 had been driven 4,000 to 9,500 miles were not the type of accidents that "speak for themselves" unaided by plaintiffs' circumstantial evidence; and 3) the tire companies did not have exclusive control at the times of the plaintiffs' injuries.
In McCrea, we determined that there was no conflict in a decision of this Court with the proposition that "[a] plaintiff is not precluded from resorting to the doctrine of res ipsa loquitur merely because he introduces evidence of specific negligence attributable to the defendant." 118 So.2d at 28 (italics removed). On the contrary, we determined that it was harmonious with this Court's decisions in West Coast Hospital Association v. Webb, 52 So.2d 803 (Fla. 1951) and McKinney Supply Co. v. Orvitz, 96 So.2d 209 (Fla. 1957). 118 So.2d at 31.
If a case is a proper res ipsa case in other respects, the presence of some direct evidence of negligence should not deprive the plaintiff of the res ipsa inference. There comes a point, however, when a plaintiff can introduce enough direct evidence of negligence to dispel the need for the inference. According to Prosser:
Plaintiff is of course bound by his own evidence; but proof of some specific facts does not necessarily exclude inferences of others. When the plaintiff shows that the railway car in which he was a passenger was derailed, there is an inference that the defendant railroad has somehow been negligent. When the plaintiff goes further and shows that the derailment was caused by an open switch, the plaintiff destroys any inference of other causes; but the inference that the defendant has not used proper care in looking after its switches is not destroyed, but considerably strengthened. If the plaintiff goes further still and shows that the switch was left open by a drunken switchman on duty, there is nothing left to infer; and if the plaintiff shows that the switch was thrown by an escaped convict with a grudge against the railroad, the plaintiff has proven himself out of court. It is only in this sense that when the facts are known there is no inference, and res ipsa loquitur simply vanishes from the case. On the basis of reasoning such as this, it is quite generally agreed that the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence, does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur.
Prosser and Keaton § 40 (footnotes omitted).
Since Goodyear we had occasion to decide City of New Smyrna Beach Utilities Commission v. McWhorter, 418 So.2d 261 (Fla. 1982). In McWhorter an accumulation of paper of unknown origin caused an obstruction in the city's sewer line, which in turn caused a blockage in the system and flooding of the plaintiff's house. We cited Goodyear and stated that the McWhorters could benefit from the doctrine of res ipsa loquitur only if they could show that: 1) direct evidence of the city's negligence was unavailable; 2) the line ordinarily would not have become obstructed and the sewage ordinarily would not have flooded their home absent negligence by the city; and 3) the main sewer line and all that entered it was under the exclusive control of the city. We found that the McWhorters failed to allege or prove any of these elements, thus precluding the giving of a res ipsa instruction. Neither Goodyear nor McWhorter stand for the proposition that by introducing "any direct evidence of negligence" the plaintiff thereby forfeits a res ipsa instruction if it is otherwise applicable. Use of the term "where direct proof of negligence is wanting" should be interpreted in light of Professor Prosser's vanishing inference. This interpretation does not require that there be a complete absence of direct proof.
In the present case the plaintiff presented expert medical evidence that her injury is of a type that ordinarily does not occur in the absence of negligence. The difficult question presented is whether, in *533 the interests of justice, we should slavishly adhere to the exclusive control element normally requisite to res ipsa application or whether we should relax the control element. It is quite clear that under traditional res ipsa loquitur analysis the defendant doctors in this case cannot be said to have each possessed exclusive control at all times when plaintiff's injury may have occurred. Yet the patient is in no position to prove which defendant or combination of defendants caused her injury to an area of her body remote from the site of surgery, because she was unconscious when it occurred. We are persuaded that the fairest course to take under these particular circumstances is to allow the plaintiff to go to the jury with the benefit of a res ipsa loquitur instruction. We agree with the reasoning of the California Supreme Court in the landmark case of Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1944):
The present case is of a type which comes within the reason and spirit of the doctrine more fully perhaps than any other. The passenger sitting awake in a railroad car at the time of a collision, the pedestrian walking along the street and struck by a falling object or the debris of an explosion, are surely not more entitled to an explanation than the unconscious patient on the operating table. Viewed from this aspect, it is difficult to see how the doctrine can, with any justification, be so restricted in its statement as to become inapplicable to a patient who submits himself to the care and custody of doctors and nurses, is rendered unconscious, and receives some injury from instrumentalities used in his treatment. Without the aid of the doctrine a patient who received permanent injuries of a serious character, obviously the result of some one's negligence, would be entirely unable to recover unless the doctors and nurses in attendance voluntarily chose to disclose the identity of the negligent person and the facts establishing liability. If this were the state of the law of negligence, the courts, to avoid gross injustice, would be forced to invoke the principles of absolute liability, irrespective of negligence, in actions by persons suffering injuries during the course of treatment under anesthesia. But we think this juncture has not yet been reached, and that the doctrine of res ipsa loquitur is properly applicable to the case before us.
... .
The control at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation. Plaintiff was rendered unconscious for the purpose of undergoing surgical treatment by the defendants; it is manifestly unreasonable for them to insist that he identify any one of them as the person who did the alleged negligent act.
Id. at 689, 690 (citations omitted).[1] We are convinced the California result is the fairer one in the unconscious patient situation. Perhaps there are other instances when the customary control requirement should be similarly relaxed, but for now we are unprepared to hypothesize and expressly limit our holding to the facts presented.
We find no merit in petitioner's second point. Accordingly, the decision below is quashed and the cause remanded for proceedings consistent herewith.
It is so ordered.
ADKINS and BARKETT, JJ., concur.
EHRLICH, J., concurs with an opinion, in which ADKINS and SHAW, JJ., concur.
*534 McDONALD, J., dissents with an opinion, in which BOYD, C.J., and OVERTON, J., concur.
EHRLICH, Justice, concurring.
I concur with the majority but wish to explain that the decision is limited to a narrow range of surgical injuries. The plaintiff submitted herself to surgery on various parts of her body, and to being rendered unconscious for purposes of the surgery. Upon regaining consciousness, she discovered an injury to a part of her body not involved in the surgical procedure. It is this unexplained injury to a part of the body not involved in the surgery from which the injury arises which justifies giving the res ipsa loquitur instruction of Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1944). If forced to choose between who should bear the burden under such circumstances, it is easy for me to assign the burden to the medical staff rather than to the unconscious, faultless patient.
The Ybarra decision is alone sufficient support for the easing of the requirement of exclusive control, but I note that this Court has also eased the exclusive control requirement in the case of exploding bottles. In such cases, we do not require the plaintiff to show the bottle literally remained in the exclusive control of the bottler until the time of injury. The law has developed a legal fiction to circumvent the requirement of exclusive control. The plaintiff can establish grounds for relying on res ipsa loquitur by proving the bottle was not subjected to extraneous abuse between the time it left the exclusive control of the bottler and the time of injury. See, e.g., Groves v. Florida Coca Cola Bottling Co., 40 So.2d 128 (Fla. 1949).
Marrero suffered an injury to a part of her body which normally should not have been at risk during the course of an anesthetized surgical procedure. An inference may justifiably arise that all of the parties to the procedure may be found liable, unless any single one can prove his own lack of negligence. It is they, rather than Marrero, who are in the best position to know what occurred while she was unconscious and in their care.
I do not conclude here, nor has the majority decided, whether injuries to parts of the body which are involved in a surgical procedure, unexplainable except for the fact that such injury normally does not occur in the absence of negligence, are also subject to the res ipsa loquitur doctrine of Ybarra. The implication that Ybarra might not be applicable is raised in Borghese v. Bartley, 402 So.2d 475 (Fla. 1st DCA 1981). The court construed section 768.45(4), Florida Statutes (1981), to allow application of the res ipsa loquitur doctrine when injury is unrelated to and not a direct result of medical treatment or diagnosis. The negative of the holding is that res ipsa loquitur may not be applied when the injury is direct and related. The operation of section 768.45(4) under such a circumstance, and its added statutory presumption of negligence when a foreign body is left in a surgical wound, are matters which are not before us and on which I reserve judgment.
ADKINS and SHAW, JJ., concur.
McDONALD, Justice, dissenting.
The trial judge was correct in declining to give a res ipsa loquitur instruction in this case. His primary reason for doing so was that there was no showing that the three doctor defendants had exclusive control of the plaintiff. For the res ipsa loquitur doctrine to be applicable there must be a showing that the "circumstances attendant to the injury are such that, in the light of past experience, negligence is the probable cause and the defendant is the probable actor." Chenoweth v. Kemp, 396 So.2d 1122, 1125 (Fla. 1981), citing Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339, 1342 (Fla. 1978) (emphasis supplied). Res ipsa loquitur concerns a type of circumstantial evidence upon which a plaintiff may rely to discharge his burden of proving that his injury was more probably than not the result *535 of negligent conduct on the part of the defendant.
The chief deficiency in this case is that when this litigation was submitted to the jury not all of the actors, those having control or supervision, were still in the case. Having settled with the hospital, the trial proceeded against Goldsmith, Kitsos, and Brewster. Goldsmith had performed a twenty- to thirty-minute hemorrhoidectomy and then left the operating room. Kitsos had operated in the abdominal area and also removed a cyst from an eyelid. His procedures lasted two to two-and-one-half hours. Brewster was the anesthesiologist for both procedures. Also present with substantial responsibilities were the hospital's nurses.
Marrero suffered a brachial plexus injury. Her chief theory was that this was caused by a traction injury brought about by improper positioning of her right arm on the operating table. The directions for the position of the arm were the doctors' responsibility; the actual positioning was performed by the nurses. Kitsos, for the most part, stood on the left side of the patient during his procedure. Almost everyone agreed that if the injury was caused by faulty positioning it could not have occurred during the twenty to thirty minutes that Goldsmith was operating. Brewster spent his time at the head of the patient checking respiration and vital signs. The nurses moved Marrero onto the operating table for Goldsmith's operation. They moved her position somewhat for the Kitsos operation. They took her from the operating room to the recovery room where she remained until the anesthesia wore off. It was when Marrero, herself a nurse, awakened from the effects of the anesthesia, that she noticed something amiss with her arm. There was no indication whatsoever that either surgical procedure directly caused the condition.
Res ipsa loquitur is not a substantive rule of law, but is rather a rule of evidence. American District Electric Protective Co. v. Seaboard Air Line Railway, 129 Fla. 518, 177 So. 294 (1937). It is a form of circumstantial evidence. For circumstantial evidence to be adequate in a civil case the circumstances must be such that any reasonable inference deducible from the circumstances which would authorize recovery must outweigh each and every contrary reasonable inference. Voelker v. Combined Insurance Co., 73 So.2d 403 (Fla. 1954). In this case, not only was the cause of the condition unknown, the causing agent or party is unknown. It is at least as likely that it was caused by some of the acts of the nurses, acting independently from the orders and supervision of the doctors, as it was by the acts or directions of the doctors. The inferences of negligence by the doctors simply do not outweigh all other inferences.
This case was submitted to the jury on the standard instructions of negligence, as it should have been. It was a long and expensive trial. By its verdict the jury concluded that the doctors committed no acts of negligence. It should now end with that finding being upheld.
BOYD, C.J., and OVERTON, J., concur.
NOTES
[1] The application of res ipsa loquitur in Ybarra has been criticized and disparagingly referred to as "California res ipsa." O.C. Adamson, Medical Malpractice: Misuse of Res Ipsa Loquitur, 46 Minn.Law Rev. 1043 (1962). We obviously agree with a different perspective. E. Wayne Thode, The Unconscious Patient: Who Should Bear the Risk of Unexplained Injuries to a Healthy Part of His Body?, 1969 Utah Law Rev. 1.