579 So.2d 201 (1991)
Eppie KEYES, Appellant,
v.
TALLAHASSEE MEMORIAL REGIONAL MEDICAL CENTER, Appellee.
No. 90-2550.
District Court of Appeal of Florida, First District.
April 22, 1991.
Rehearing Denied June 4, 1991.
*202 Jackson G. Beatty, Michael L. Rosen and Susan L. Turner of Holland & Knight, Tallahassee, for appellant.
Jesse F. Suber and Laura Beth Faragasso of Henry, Buchanan, Mick & English, Tallahassee, for appellee.
WOLF, Judge.
Keyes appeals from a judgment entered upon a jury verdict which found no negligence on the part of Tallahassee Memorial Regional Medical Center (hospital). Keyes raises two issues on appeal: (1) Whether the trial court erred in refusing to give the requested jury instructions on res ipsa loquitur, and (2) whether the trial court erred in excluding testimony of a hospital employee concerning what she had been told by another unidentified hospital employee regarding the accident scene. We find merit in appellant's first point and reverse.
Mrs. Keyes was a 77-year-old woman who underwent hip-pinning surgery. Because Mrs. Keyes had displayed signs of senility and confusion prior to surgery, her doctor recommended that after surgery Mrs. Keyes remain in bed with a chest posey for her safety.[1]
On the first night after surgery, Mrs. Keyes' doctor ordered continuous attendants for Mrs. Keyes. For several days after surgery, the appellant was provided round-the-clock attendants.[2] On November 12, 1987, at 6:00 p.m., round-the-clock attendant care ceased.[3]
At all times prior to the fall, Mrs. Keyes was described as "confused," "disoriented," and "agitated." The hospital charts reflect that at 2:00 p.m. on November 12, Mrs. Keyes had tried to get out of the bed.
At 7:00 p.m., Nurse Barrett had checked Mrs. Keyes who was again attempting to get out of the bed. The nurse testified that she checked the posey during this visit. Nurse Barrett then took a break and asked Nurse Gardner to continue to check on the appellant. While there is no record of Nurse Gardner checking on the patient, she testified that she went to the room once prior to 7:45 p.m. At 7:45 p.m., Nurse Gardner heard Mrs. Keyes yell for help. She went to the room and found Mrs. Keyes on the floor. With the help of two other nurses, Mrs. Keyes was returned to the bed, and the posey was reapplied. Mrs. Keyes had sustained a broken left hip.
As a result of the fall, Mrs. Keyes filed a negligence action against the hospital. A trial was held on April 9 and 10, 1990. Mrs. Keyes was unable to remember the fall or give responsive answers to questions and, thus, was unable to testify. Since no one else witnessed the accident, there was no direct evidence as to how the fall occurred. The testimony presented at trial focused on circumstantial evidence relating to the application of the posey, its location after the fall, and the level of supervision provided by the hospital staff in the hours immediately preceding the fall.
Nurse Gardner testified that the posey was still tied to the bed when the patient was found on the floor, although her notes recorded shortly after the accident did not mention the location of the posey.[4] The *203 notes made by Mrs. Keyes' doctor the day after the accident indicated that the posey was still on Mrs. Keyes at the time she was found.
Mrs. Keyes' daughter testified that she had seen the posey improperly tied to the rail of the bed rather than the frame several times when she visited her mother. Appellant proffered the testimony of Nurse Barrett that when she returned from dinner, one of the nurses told her that Mrs. Keyes was found on the floor with the posey on and the bed rail still up. She could not remember who made the statement or whether they had personally observed the event. The trial court found that the statement was hearsay and that the statement did not carry the inherent reliability necessary for an exception to the hearsay rule.
Expert witnesses were presented by both sides as to the proper supervision which should have been provided for Mrs. Keyes, and concerning the effectiveness of the posey as a restraint. Appellant's expert, an RPN, felt that the posey was not properly applied but admitted that some patients have inexplicably removed themselves from properly applied chest poseys. Dr. Holland also indicated that some patients may free themselves from properly applied poseys. The hospital's expert, a nursing supervisor from Shands Hospital, testified that she had observed patients wiggle out of or untie a posey, but conceded that such situations are "unusual." She stated that poseys were about 85 percent effective.
At the close of the evidence, appellant's attorneys requested that the trial court give the jury instruction on res ipsa loquitur. The court declined to do so. After deliberations, the jury returned a verdict in favor of the hospital.
Res ipsa loquitur is a rule of evidence that permits, but does not compel, an inference of negligence under certain circumstances. Marrero v. Goldsmith, 486 So.2d 530 (Fla. 1986). The doctrine is to be used in limited circumstances. City of New Smyrna Beach Utilities Comm'n v. McWhorter, 418 So.2d 261 (Fla. 1982). Where appropriate, however, it provides a mechanism for injured parties to get a case in front of a jury where there is limited direct evidence of negligence. Marrero, supra. The doctrine may be utilized in cases where the evidence demonstrates that the type of injury sustained ordinarily does not occur in the absence of negligence. Marrero, supra, at 532.
In Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339 (Fla. 1978), the supreme court explained the doctrine and outlined what elements must be demonstrated to warrant the giving of the instruction on res ipsa loquitur.
It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.
Goodyear, 358 So.2d at 1341-42 (footnotes omitted).
The hospital patient relationship is one area where the application of the doctrine of res ipsa loquitur has been utilized to prevent injustice. See Marrero, supra, at 533, citing with approval from Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1944). The unconscious patient is entitled to an explanation concerning an injury and is, thus, in many cases, entitled to the inference created by the doctrine. Marrero, supra; Borghese v. Bartley, 402 So.2d 475 (Fla. 1st DCA 1981).
In Borghese, supra, this court said an unconscious patient is entitled to have the jury instructed on res ipsa loquitur where the patient
can establish that her injury occurred while she was under the complete control of the physicians and/or hospital personnel, that the injury was unrelated to the surgical procedure or other medical treatment and that the injury would not *204 normally occur in the absence of negligence.
Borghese, supra, at 477. We find no reason that the same test should not be utilized in a situation where an aged or senile patient is so disoriented that she can neither remember nor explain how she was injured.
The hospital argues, however, that the trial judge was correct in not instructing the jury as to res ipsa loquitur because: (1) There was insufficient evidence of control, (2) the injury could have occurred without the negligence of the hospital, and (3) the plaintiff presented direct evidence of the cause of injury and, thus, was not entitled to the instruction on res ipsa loquitur.[5] We find the hospital's arguments to be without merit.
In Marrero, supra, the supreme court noted that the exclusive control requirement is somewhat relaxed in the hospital-patient context. In the instant case, it is undisputed that the hospital was the party exclusively responsible for maintaining the restraints on Mrs. Keyes. At the time of the accident, the hospital also was the only party responsible for supervising Mrs. Keyes.[6]
The hospital next argues that the testimony reveals that it is possible that Mrs. Keyes could have gotten out of a properly applied posey. The mere possibility that this accident could have occurred without negligence does not defeat a party's entitlement to an instruction on res ipsa loquitur. The proper test is whether the accident would have occurred without negligence on the part of the defendant in the ordinary course of events. See Marrero, supra, at 531. The testimony in the instant case established that a patient would not normally be able to escape from a properly applied posey.
Lastly, the hospital argues that there was too much direct evidence concerning what occurred to apply the inferences provided by the instruction on res ipsa loquitur. The presentation of some direct evidence or proof of some specific facts does not necessarily exclude inference of others. See Marrero, supra, at 532. While "there comes a point, however, when a plaintiff can introduce enough direct evidence to dispel the need for the inference," the evidence in the instant case has not crossed that threshold.
In this case, there is absolutely no competent evidence concerning how Mrs. Keyes ended up on the floor of her hospital room with a broken hip. There was very little evidence of how the posey was tied. This is a classic case where a patient has very little evidence of how they were injured, but there is sufficient evidence to allow a jury to determine that she would not normally have been injured absent some negligence on the part of the hospital. For these reasons, we hold that it was error not to instruct the jury on the doctrine of res ipsa loquitur.
As to point II, Mrs. Keyes asserts that the trial court erred by not allowing Nurse Barrett to testify concerning statements made to her by an unidentified nurse which indicated that the posey was still on Mrs. Keyes at the time she was found on the floor. While statements made by an employee of a party in the course of their employment are normally admissible pursuant to section 90.803(18)(d), Florida Statutes (1989), the general rule does not have to be applied in cases where there is an insufficient basis to establish whether the statement is made about matters within the personal knowledge of the declarant, or where the statement does not meet other tests of admissibility. In the instant case, there is no evidence that the nurse speaking to Nurse Barrett actually witnessed the matters about which she was speaking. *205 Such statements may, therefore, involve hearsay within hearsay. Absent proof that the underlying statement met a hearsay exception or was based on personal knowledge, it is inadmissible under section 90.805, Florida Statutes (1989).[7]
Under the circumstances of the instant case, we do not feel that the trial judge abused his discretion in denying the admissibility of the statement.
Reversed in part, affirmed in part, and remanded with directions to grant a new trial.
ZEHMER, J., concurs.
NIMMONS, J., concurring and dissenting with opinion.
NIMMONS, Judge, concurring in part and dissenting in part.
I concur with the court's opinion insofar as its holding on point II that the trial court did not err in precluding Nurse Barrett from testifying concerning the statements made to her by the unidentified nurse.
However, as to point I, I believe that the trial court properly declined to give an instruction on res ipsa loquitur. In my view, the plaintiff presented substantial evidence through the testimony of lay and expert witnesses from which the jury could have found negligence unaided by the inference afforded by the res ipsa doctrine. See Benigno v. Cypress Community Hospital, Inc., 386 So.2d 1303 (Fla. 4th DCA 1980).[1] Res ipsa being a doctrine of "extremely limited applicability," Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339 (Fla. 1978) and Otis Elevator Company v. Chambliss, 511 So.2d 412 (Fla. 1st DCA 1987), I can find no fault in the trial court's refusal to give the requested instruction.
NOTES
[1] Evidently, a chest posey is a restraining device utilized by hospitals which wraps around a patient and is attached to the bed frame, but allows the patient some freedom of arm movement.
[2] Attendant care during this period was provided by full-time sitters hired by the family or by family members.
[3] While there is some dispute between the parties whether the care was stopped as a result of advice from hospital staff, the dispute is unimportant for the disposition of this appeal.
[4] The location of the posey was critical because if it was on the patient rather than on the bed, it would indicate that the posey was not properly attached to the bed frame. Conversely, if it was still attached to the bed, it would indicate, although it was properly attached, the patient somehow slipped out of the posey.
[5] At oral argument for the first time, appellee also argued that Mrs. Keyes was not entitled to have the jury instructed on res ipsa loquitor since she had failed to specifically plead entitlement to relief under the doctrine. This argument is without merit. See Cortez Roofing, Inc. v. Barolo, 323 So.2d 45 (Fla. 2nd DCA 1975).
[6] The attendants hired by the family had been discontinued prior to the time of the accident in question.
[7] We are not unmindful of the case of City of Miami v. Fletcher, 167 So.2d 638 (Fla. 3rd DCA 1964), but feel that case may be distinguished in that the issue there involved knowledge of the employer and the evidence was offered to show state of mind rather than to prove the fact asserted.
[1] In Benigno, the court stated:

Plaintiff herein failed to establish the essential elements of the doctrine and to demonstrate a lack of available evidence pertaining to the occurrence. In fact, contrary to application of the doctrine, plaintiff presented substantial direct testimony regarding the defendant's alleged negligence in placing decedent in the chair. In attempting to prove the hospital's negligence, plaintiff introduced the testimony of numerous experts, the hospital personnel, and the doctors and nurses involved in decedent's care. We conclude this was not a proper case for a res ipsa loquitur instruction.
Id. at 1304 (footnote omitted).