CRENSHAW, Judge.
 

 Michele Soltwisch, individually and as personal representative of the Estate of Ernest Soltwisch (the Estate), appeals a final judgment that granted Pasco County’s motion for directed verdict on the parties’ negligence and res ipsa loquitur claims. Because there was evidence from which a jury could have concluded that Pasco County was liable for Mr. Solt-wisch’s injuries, we find the trial court erred as a matter of law. Accordingly, we reverse and remand for a new trial.
 
 [1]
 

 Our standard of review on a ruling on a motion for directed verdict is de novo.
 
 See
 
 
 *86
 

 Fell v. Carlin,
 
 6 So.3d 119, 120 (Fla. 2d DCA 2009);
 
 Sims v. Cristinzio,
 
 898 So.2d 1004, 1006 (Fla. 2d DCA 2005). In considering the merits of a motion for directed verdict, the court must review the evidence in the light most favorable to the nonmov-ing party.
 
 See Williamson v. Superior Ins. Co.,
 
 746 So.2d 483, 485 (Fla. 2d DCA 1999).
 
 “‘A
 
 motion for directed verdict should be granted only where
 
 no
 
 view of the evidence, or inferences made therefrom, could support a verdict for the non-moving party.’ ”
 
 Fell,
 
 6 So.3d at 120 (emphasis added) (quoting
 
 Sims,
 
 898 So.2d at 1005).
 

 The facts, when viewed in the light most favorable to the nonmoving parties, provide that on May 20, 2004, seventy-five-year-old Mr. Soltwisch was at the Wound Care Clinic (the Clinic) with his wife Michele Soltwisch receiving hyperbaric oxygen therapy to relieve three pressure sores that had developed on his left foot. While Mr. Soltwisch was undergoing treatment in the hyperbaric chamber, the hy-perbaric physician, Dr. Donald Vierling, was advised that Mr. Soltwisch, who had adult type II diabetes, appeared to experience some mild tremors. Dr. Vierling assisted in removing Mr. Soltwisch out of the chamber and promptly checked him over. Mr. Soltwisch was awake and responsive but not vocal. Though he had low blood sugar, Dr. Vierling did not find any signs Mr. Soltwisch suffered a stroke or grand mal seizure. Further, when Mr. Soltwisch moved his extremities, Dr. Vierling did not observe any evidence of any pain or fractures. Nonetheless, because the Clinic’s internal policy required patients who suffered from seizures to be transported to an emergency room, Dr. Vierling and his staff called 911.
 

 An ambulance operated by the Pasco County Fire Rescue arrived at the Clinic to take Mr. Soltwisch to the hospital. Before the transport occurred, a Fire Rescue paramedic completed a run report indicating Mr. Soltwisch’s initial vital signs were normal and he was semi-responsive. By the time Mr. Soltwisch arrived at the hospital, however, the attending emergency department nurse found Mr. Soltwisch verbally complaining of pain coming from his right hip. The vital signs taken in the emergency department also indicated a sharp increase in Mr. Soltwisch’s blood pressure. An x-ray obtained in the hospital’s emergency department showed Mr. Soltwisch had an acute right femoral neck fracture.
 
 [2]
 
 When Mr. Soltwisch underwent surgery to repair the fracture, he acquired an infection that resulted in his death.
 

 Mrs. Soltwisch and the Estate subsequently filed a wrongful death action against Pasco County. At trial, Mrs. Solt-wisch testified she heard a loud bang as she observed the paramedics place Mr. Soltwisch into the back of the ambulance. Mrs. Soltwisch and the Estate also presented several expert witnesses, including Dr. William Anderson, who testified Mr. Soltwisch’s fracture occurred as a result of the transport by Pasco County’s paramedics, not from a seizure or osteoporosis, and registered nurse Susan Campbell, who opined the Pasco County paramedics did not meet the requisite standard of care during the transport. Nonetheless, Pasco County moved for a directed verdict at the conclusion of the plaintiffs’ case, arguing the plaintiffs failed to establish any evidence that Pasco County was either negligent during its care of Mr. Soltwisch or in exclusive control of the instrumentality that caused his fracture. The trial court agreed and, relying on
 
 South Broward
 
 
 *87
 

 Hospital District v. Schmitt,
 
 172 So.2d 12 (Fla. 2d DCA 1965), entered final judgment in favor of Pasco County.
 

 As we have stated in the past, “ ‘Florida law cautions against a motion for directed verdict in negligence cases since the evidence to support the elements of negligence are frequently subject to more than one interpretation.’ ”
 
 Hirst v. Segrest Farms, Inc.,
 
 12 So.3d 1257, 1258 (Fla. 2d DCA 2009) (quoting
 
 Nunez v. Lee County, 111
 
 So.2d 1016, 1016 (Fla. 2d DCA 2000)). Here, we find, when construing the evidence in the light most favorable to the nonmoving parties, that Mrs. Soltwiseh and the Estate presented sufficient evidence from which a jury could conclude that Pasco County breached its duty of care to Mr. Soltwiseh. Therefore, the trial court’s directed verdict on their general negligence claim was error.
 

 We also find the trial court’s reliance on
 
 Schmitt
 
 to be misplaced. In
 
 Schmitt,
 
 the plaintiff, while allegedly unconscious, sustained injuries to her head and her face as a result of falling off an examining table in the defendant hospital’s emergency room.
 
 Schmitt,
 
 172 So.2d at 14. The plaintiff asserted the case fell under the res ipsa loquitur doctrine because the injuries occurred after the attending nurse had left the room. This court disagreed, finding that issues relating to the plaintiffs consciousness at the time of her injury did not present a scenario upon which it could be concluded that the plaintiffs injuries were sustained while under the sole control of the defendant.
 
 Id.
 
 at 15. We note the cause of the plaintiffs injuries in
 
 Schmitt
 
 was known but the manner of how the injuries were sustained was not.
 

 We find the facts of this case are more akin to
 
 West Coast Hospital Ass’n v. Webb,
 
 52 So.2d 803 (Fla.1951), wherein the plaintiff, while in a diabetic coma, suffered severe unexplained burns to her body after she was admitted to the defendant hospital. Because the evidence demonstrated the plaintiff did not have any burns at the time she was admitted and neither party could establish the cause of the plaintiffs injuries, the Florida Supreme Court determined the facts warranted the invocation of the res ipsa loquitur doctrine.
 
 Id.
 
 at 804. Similarly, Mrs. Soltwiseh and the Estate were not required to establish the identity of the instrumentality that caused Mr. Soltwisch’s injury; rather the res ipsa loquitur doctrine merely requires “that the instrumentality causing [the plaintiffs] injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control.”
 
 Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.,
 
 358 So.2d 1339, 1341-42 (Fla.1978). Stated differently, it is the exclusivity of the defendant’s control that permits an inference of negligence under the doctrine, not the identity of the instrumentality itself.
 
 See McDougald v. Perry,
 
 716 So.2d 783, 785 (Fla.1998).
 

 Here, evidence was adduced at trial that Mr. Soltwiseh, who did not appear to have any fracture before he left the Clinic, somehow incurred a femoral fracture while he was under Pasco County’s exclusive control. We find these facts were sufficient to overcome Pasco County’s motion for directed verdict and the plaintiffs were entitled to have the jury determine whether Mr. Soltwisch’s fracture occurred while he was transported to the hospital. Thus we conclude the trial court erred in granting Pasco County’s motion for a directed verdict.
 

 Reversed and remanded for a new trial.
 

 DAVIS and MORRIS, JJ., Concur.
 

 [1]
 

 . We affirm the trial court's rulings on Mrs. Soltwisch and the Estate’s pre-trial issues without discussion. We note our ruling does not preclude the plaintiffs, upon a proper showing, from engaging in further discovery if the circumstances warrant it.
 

 [2]
 

 . A femoral neck fracture is defined as "[a] fracture of the neck of tire thigh bone.” 2 J.E. Schmidt, M.D.,
 
 Attorneys' Dictionary of Medicine and Word Finder
 
 F-54 (Matthew Bender 2007).