DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SIMON DOCKSWELL** and **SANDRA DOCKSWELL,**
Appellants,

v.

**BETHESDA MEMORIAL HOSPITAL, INC.,** a Florida corporation,
Appellee.

No. 4D13-2936

[September 16, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 502012CA006331XXXXMB.

Geoffrey B. Marks and Erin C. Hantman of Billbrough & Marks, P.A., Coral Gables, for appellants.

William T. Viergever of Sonneborn Rutter Cooney & Smith P.A., West Palm Beach, for appellee.

### *ON MOTION FOR REHEARING*

CIKLIN, C.J.

We deny the appellant's motion for rehearing. Because of the inclusion of a dissent to our denial of the motion for rehearing, we re-issue our February 18, 2015 opinion with the addition of the dissent to allow the appeal to be considered in full context.

Simon and Sandra Dockswell challenge an adverse final judgment entered upon the rendition of a jury verdict in favor of Bethesda Memorial Hospital in a medical negligence action. The Dockswells allege that the trial court erred by failing to give their requested instruction on retained foreign bodies, which provided for a presumption of negligence against the hospital. Finding no error, we affirm.

Mr. Dockswell was admitted to the hospital for surgery. The procedure included placement of a drainage tube to evacuate postoperative fluid. The following day, a nurse came to Mr. Dockswell's room to remove the

drainage tube. Mrs. Dockswell was present in the room and saw the nurse pull the tube. Mr. Dockswell experienced no immediate discomfort, but a 4.25-inch section of the tube was unknowingly left inside him. Approximately four months later, after Mr. Dockswell experienced continuing pain in the region, a CT scan revealed that a portion of the drain remained in his body. A second surgery was performed to remove the remaining piece of the drain.

The Dockswells filed suit against the hospital alleging, among other claims, that 1) the tube was negligently removed with excessive speed and force, and 2) the nurse negligently failed to inspect the drainage tube to ensure that it was removed entirely, which resulted in the tube fragment being overlooked. At trial, Mr. Dockswell testified that he was on pain medication at the time that the nurse attempted to remove the tube, but he had a general recollection of a nurse coming into his room and saying the drain needed to be removed. His wife also testified to the nurse removing the drain. The nurse could not specifically remember removing Mr. Dockswell's drainage tube, but she testified that she removes drainage tubes on a frequent basis, always without difficulty. Each of the parties presented an expert to opine on the nurse's compliance with the standard of care in removing the drainage tube or lack thereof.

At the charge conference, the Dockswells sought a jury instruction establishing a presumption of negligence against the hospital because of the presence of the tube fragment. The proposed instruction was based on Florida Standard Jury Instruction 402.4c:

c. Foreign bodies:

**[Negligence is the failure to use reasonable care.] The presence of** (name of foreign body) **in** (patient's) **body establishes negligence unless** (defendant(s)) **prove(s) by the greater weight of the evidence that [he] [she] [it] was not negligent.**

(Emphasis in original). The instruction is derived from section 766.102(3), Florida Statutes, which provides that a plaintiff generally maintains the burden of proving a breach of the professional standard of care, but that "the discovery of the presence of a foreign body . . . commonly used in surgical, examination, or diagnostic procedures, shall be prima facie evidence of negligence . . . ." *See id.* at n.1; § 766.102(3)(b), Fla. Stat. (2011).

The hospital asserted two main arguments in opposing the instruction: 1) that the presumption of negligence does not apply in instances where

the plaintiff is aware of and has evidence of the culpable party, and 2) that the foreign body instruction is inapplicable to the first of the Dockswells' two claims (that the nurse negligently applied excessive speed and force) since the instruction in question would be applicable only as to the nurse's alleged failure to inspect which then resulted in the tube being left behind for a later medical discovery.

Recognizing the distinction between the two claims, the trial court sought a set of proposed instructions applying the foreign body instruction to only the negligent inspection claim and not to the claim that alleged excessive speed and force during the removal of the drain. Neither the Dockswells nor the hospital submitted the instructions as requested by the trial court.

The trial court ultimately denied the requested instruction, explaining that the Dockswells had the ability to present direct evidence of the nurse's negligence, whereas the word "discovery" in section 766.102 (and thus the instruction) suggests a situation where a patient is uncertain as to where responsibility for negligence lies. The jury returned a verdict for the hospital.

On appeal, the Dockswells argue that, because of the discovery of the drainage tube fragment inside Mr. Dockswell, they were entitled to the standard jury instruction on foreign bodies.

"Failure to give a requested jury instruction constitutes reversible error where: (1) the requested instruction accurately states the law, (2) the facts in the case support the giving of the instruction, and (3) the instruction was necessary to allow the jury to properly resolve the issues in the case." *Florio v. Eng*, 879 So. 2d 678, 680 (Fla. 4th DCA 2004) (citation omitted).

The foreign body instruction is derived from section 766.102(3), which provides in pertinent part:

> (b) The existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care . . . . However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination, or diagnostic procedures, shall be prima facie evidence of negligence on the part of the health care provider.

*See* Fla. Std. Jury Instr. (Civ.) 402.4c, n.1.

Essentially, the statute is a codification of the doctrine of res ipsa loquitur in the medical negligence context. *See Borghese v. Bartley*, 402 So. 2d 475, 477 (Fla. 1st DCA 1981).[1] In *Borghese*, the plaintiff awoke from surgery with an unexplained burn on a limb that was not involved in the operation and brought suit. The trial court entered summary judgment for the defendant because the plaintiff intended to rely exclusively on a theory of res ipsa loquitur, which the defendant contended could no longer be applied to actions against health care providers since enactment of the applicable statute pertaining to medical negligence. The First District Court of Appeal reversed and explained that the statute disallows the inference of negligence only in circumstances where the injury actually relates to the treatment sought:

> [T]he term medical injury . . . refers to an injury sustained as a direct result of medical treatment or diagnosis, and does not encompass injuries totally unrelated thereto. Thus, when a plaintiff establishes that the injury is outside the scope of medical treatment or diagnosis, and the facts and "circumstances attendant to the injury are such that, in light of past experience, negligence is the probable cause and the defendant is the probable actor," the doctrine of res ipsa loquitur is applicable.

*Id.* (quoting *Chenoweth v. Kemp*, 396 So. 2d 1122, 1125 (Fla. 1981), *receded from on other grounds in Sheffield v. Superior Ins. Co.*, 800 So. 2d 197, 202-03 (Fla. 2001); *Goodyear Tire & Rubber Co. v. Hughes Supply, Inc.*, 358 So. 2d 1339, 1342 (Fla. 1978)). The *Borghese* court concluded that the plaintiff could rely on res ipsa loquitur if she established that the injury was unrelated to her surgical procedure, and that the injury occurred while she was under complete control of providers and would not normally occur without negligence. *Id.*

Similarly, the Third District Court of Appeal has explained that the fact of unconsciousness during surgery coupled with an unexplained injury is insufficient to give rise to the application of the res ipsa loquitur doctrine, but rather "it is the *combination* of an unconscious plaintiff with an unexplained injury which is *unrelated* to the surgical procedure or treatment which justifies the *res ipsa* inference." *Kenyon v. Miller*, 756 So. 2d 133, 136 (Fla. 3d DCA 2000) (emphasis in original) (citations omitted).

---

[1] In *Borghese,* the court was interpreting section 768.45(4), which was eventually renumbered as section 766.102(4), then as 766.102(3). *See* Ch. 88-1, § 78; Ch. 03-416, § 48, Laws of Fla.

In *Kenyon*, the plaintiff's cause of action related to mesh that was purposefully implanted during surgery and was intended to remain as a part of her treatment, but had to be removed following infection. The appellate court held that negligence cannot be inferred from the fact that treatment was unsuccessful or terminated with poor results. *Id.* The court also found reversible error due to the fact that the res ipsa loquitur instruction improperly permitted the jury to disregard conflicting expert testimony on the standard of care presented at trial and infer that the doctor was negligent solely based on the presence of the infected surgical mesh. *Id.*

Affirming a trial court's declination to give a res ipsa loquitur jury instruction, this court has likewise held that a plaintiff was not entitled to the instruction where she "was not unconscious when her injury occurred, there was no mystery as to how the injury occurred, and there was only one possibly culpable defendant," and thus, "she was able to adduce sufficient direct evidence of negligence." *McDonald v. Med. Imaging Ctr. of Boca Raton*, 662 So. 2d 733, 735 (Fla. 4th DCA 1995). The court explained that "the presence of some direct evidence of negligence should not deprive the plaintiff of [a] res ipsa inference," but "[t]here comes a point, however, when a plaintiff can introduce enough direct evidence of negligence to dispel the need for the inference." *Id.* at 734 (quoting *Marrero v. Goldsmith*, 486 So. 2d 530, 532 (Fla. 1986)).

In the matter at hand, the facts in evidence did not give rise to the use of the foreign body jury instruction. Like the plaintiff in *McDonald*, the Dockswells were able to present direct evidence of negligence. At the time of the alleged negligence, Mr. Dockswell was medicated, but was not unconscious, and his wife was in the hospital room. There were no genuine doubts surrounding the identity of the allegedly culpable party or the events that led to the tube being left inside of Mr. Dockswell by the time this case went to trial.

Moreover, a foreign body instruction was not necessary to allow the jury to resolve the issues in the case. As in *Kenyon*, the Dockswells and the hospital presented conflicting expert testimony on whether the nurse met the standard of care or was negligent. The use of the foreign body jury instruction would have improperly permitted the jury to disregard the conflicting testimony of the experts. Where sufficient facts were known to enable the parties to present conflicting expert testimony on reasonable care, the issue of whether the nurse failed to meet the standard of care and was negligent "should have been left to the jury based upon their assessment of the credibility of the expert witnesses." *See Kenyon*, 756 So. 2d at 136.

In light of the evidence presented, including the conflicting expert testimony, the foreign body instruction was neither necessary to enable the jury to resolve the issues in the case nor supported by the facts of the case.

Furthermore, the hospital argued below that, at best, the foreign body instruction would only be appropriate for the Dockswells' claim that the nurse negligently failed to inspect the tube. Assuming, arguendo, that the nurse was negligent, excessive speed and force in removing the tube resulted only in the creation of the fragment. If the nurse immediately inspected the tube and realized that a piece was missing, Mr. Dockswell would still need surgery to remove it, and it would not be left behind for "discovery" at a later date.

Despite the trial court's request, the parties did not submit proposed instructions differentiating the claims, therefore we decline to address this unpreserved issue of whether the foreign body instruction may have been properly applied to the claim of negligent inspection, and yet not to the claim of negligent removal. *Cf. Feliciano v. Sch. Bd. of Palm Beach Cnty.*, 776 So. 2d 306, 307-08 (Fla. 4th DCA 2000) (finding that issue was not preserved for review where plaintiff objected to defendant's proposed instruction on pretext but failed to offer her own written instruction to address the issue).

We have considered the other issue raised on appeal and find no error.

*Affirmed.*

FORST, J., concurs.
CONNER, J., dissents with opinion.

CONNER, J., dissenting.

I respectfully dissent from the denial of the motion for rehearing, and upon consideration of the motion, I now conclude I can no longer concur with the majority opinion.

First, neither side in this case has contended on appeal that the doctrine of *res ipsa loquitur* applies to this case. Thus, the majority opinion affirms the trial court on a legal analysis that was not argued by the parties below or used by the trial court. Instead, the issue to be resolved by us on appeal is how the first and last sentences of section 766.102(3)(b), Florida Statutes (2011), apply to a set of facts.

6

The primary factual scenario that underlies the analysis in this case is that a 4.25 inch drainage tube, placed during surgery for temporary post-operative use, broke and remained inside of Mr. Dockswell's abdomen when the rest of the tube was removed by a nurse. In determining the application of the first and last sentences of section 766.102(3)(b), it is important to recognize the universe of explanations as to how or why the drain tube broke: either (1) the surgeon did something wrong; (2) the nurse did something wrong; or (3) the tube was latently defective before it was placed inside the abdomen.

In understanding the application of the first and last sentences of section 766.102(3)(b), it is also important to recognize the overall structure of legal concepts set forth by the legislature in adopting section 766.102. Section 766.102 establishes the threshold requirements for filing a medical negligence suit and the evidentiary standards for proving the claim. Subsection (3)(b) provides:

> (b) The existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care . . . . However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination, or diagnostic procedures, shall be prima facie evidence of negligence on the part of the health care provider.

§ 766.102(3)(b), Fla. Stat. (2011).

The first sentence of section 766.102(3)(b) codifies the principle that a medical injury does not create any *inference* or *presumption* of negligence by a health care provider. *Id.* That principle recognizes there are inherent risks in all medical procedures.[2] Thus, the first sentence provides, in essence, that a bad outcome (the condition was not successfully remediated or a new problem was created) is not proof of negligence by the medical provider. The last sentence of section 766.102(3)(b) provides an exception to the general rule established by the first sentence.[3] The last sentence provides, in essence, that if a medical procedure has the

---

[2] The most basic risk, among the many, is a misdiagnosis of the condition.
[3] The fact that the last sentence begins with "however" sets forth an exception to the principles announced immediately before.

7

unintended result of leaving a foreign body in the patient's body after the procedure is completed, that fact alone is *prima facie evidence of negligence on the part of the heath care provider.*

In recognizing that the legislature codified an important exception relating to foreign bodies, our supreme court adopted Florida Standard Jury Instruction (Civil) 402.4c, which the appellant requested. The hospital opposed the instruction, arguing that because the Dockswells were contending the nurse affirmatively did something wrong to break the drainage tube, the instruction was not applicable. The hospital asserted, and the trial court agreed, that standard instruction 402.4c was only applicable to a theory of liability in which the claimant had no knowledge or proof of how or why the drainage tube broke. The trial court agreed with the hospital, after interpreting the word "discovery" as contemplating a situation in which the claimant had no knowledge or proof of how or why the drain broke. But if the legislature intended the statute to apply the way the trial court construed it, the legislature could have simply said that if an unintended foreign body remains after a medical procedure *and the claimant cannot prove why or how it happened*, then the fact the foreign body remained is *prima facie* evidence of negligence by the medical provider.

I contend the notion of "discovery," as used by the legislature, simply connotes that the foreign body remaining in the patient's body was an unintended consequence of the medical procedure. According to Webster's dictionary, "discovery" means "the act or process of discovering." Merriam-Webster's Seventh New Collegiate Dictionary (1969). To "discover" means "to obtain sight or knowledge of for the first time." *Id.* According to Webster's, a synonym for "discover" is "unearth," which "implies bringing to light something forgotten or hidden." *Id.*

I agree with the Dockswells that the last sentence of section 766.102(3)(b) codifies and expands "the Zeagler Rule" espoused in our case law during the 1930's in *Smith v. Zeagler*, 157 So. 328 (Fla. 1934). In *Zeagler*, our supreme court said that "[t]he burden of showing due care is upon a surgeon who leaves a sponge inclosed [sic] in a wound after the performance of an operation." *Id.* at 329. The court went on to hold that leaving a sponge inside the patient during the surgery process was negligence *per se. Id.* ("The authorities are legion to the effect that it is negligence per se for a surgeon to leave a sponge in an abdominal incision made in his patient in the course of his performance of a surgical operation upon such patient.") (citations omitted).

Case law subsequently limited the application of *Zeagler* to surgeons and not nurses or hospitals. In *Beaches Hospital v. Lee*, 384 So. 2d 234, 236 (Fla. 1st DCA 1980), the First District quoted the language in *Zeagler* discussing "the burden of showing due care" and referred to the language as "the Zeagler rule." Immediately after the First District coined the phrase "the Zeagler rule," the First District inserted footnote 4 in the opinion and stated:

> That rule [referring to "the Zeagler rule"] applied to the case here since the operation was performed in January, 1976. On July 1, 1976, Section 768.45(1), Florida Statutes (1977), [which subsequently became section 766.102(3)(b)] became effective, and provides unlike Zeagler that the discovery of the presence of a sponge is only prima facie evidence of the health care provider's negligence. *Health care providers are defined in Section 768.50(2) (b) as hospitals, physicians, osteopaths, etc.*

*Id.* at 238 n.4. (emphasis added). After noting in the footnote that the new statute did not apply to the case, the court went on to say:

> When a patient sues both a surgeon and a hospital or other health care provider for injuries resulting from the negligent abandonment of a sponge within an enclosed wound, we consider it would be inappropriate for a trial judge to grant a request for the Zeagler instruction since a jury could find that the hospital's attendants were solely responsible for the patient's injuries. We think, then, the instruction is applicable only to an action between a patient and a surgeon,[5] and has no materiality when another health care provider is involved.

*Id.* at 237. Importantly, in footnote 5 of the opinion, the First District stated:

> Assuming the action commenced before the effective date of Section 768.45(1), *otherwise the statute's provisions control.*

*Id. at* 238 n.5. (emphasis added). Thus, the First District recognized, shortly after the enactment of section 768.45(1) (the predecessor to section 766.102(3)(b)), that the statute established *prima facie* evidence of negligence by a health care provider when an unintended foreign body remains, and "the Zeagler rule" was no longer limited to surgeons.

I contend the last sentence of section 766.102(3)(b) is a recognition by the legislature that the first sentence of the section places too onerous a burden on the claimant to show a breach of the standard of care, when the universe of explanations for why a foreign body remained includes doctor error, nurse error, and product defect.[4]

The Dockswells put forth two theories as to why Mr. Dockswell had to undergo a *delayed* second surgery.[5] The first and primary theory argued was that the nurse breached the standard of care in removing the drainage tube. The second and less argued theory was that the nurse breached the standard of care by not noticing the drainage tube was four inches shorter than it should have been after being removed. Under the clear wording of the statute, if the Dockswells came into court and said, "We don't know how or why the drainage tube broke off in Mr. Dockswell's body," the Dockswells would have been entitled to standard instruction 402.4c. I find nothing in the wording of the statute that precludes the entitlement to standard instruction 402.4c because the Dockswells said, "The nurse did something wrong." If a set of facts entitles one to a legal determination that *prima facie* evidence of negligence is established, additional affirmative evidence of negligence does not *erase* the *prima facie* determination. The trial court's view of the meaning of "discovery" as used in the last sentence of section 766.102(3)(b) imports words into the statute that are not there. Thus, I would reverse and remand for a new trial because the trial court failed to give an instruction to which the Dockswells were entitled.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

---

[4] If, by the adoption of section 766.102(3)(b), the legislature intended to completely abolish the application of *res ipsa loquitur* in medical malpractice cases, it makes sense that the legislature concluded it places too onerous a burden on the claimant to show a breach of the standard of care when the universe of explanations for why a foreign body remained includes doctor error, nurse error, and product defect.

[5] In seeking damages, the Dockswells argued that Mr. Dockswell would not have endured four months of pain caused by the foreign body if the nurse had promptly recognized that four inches of the drain remained in his abdomen.

10