756 So.2d 133 (2000)
Norman KENYON, M.D., Appellant,
v.
Wilma MILLER, Appellee.
No. 3D98-3204.
District Court of Appeal of Florida, Third District.
March 1, 2000.
Rehearing Denied May 10, 2000.
*134 Burt E. Redlus, Miami; Cooper & Wolfe, P.A. and Marc Cooper, and Barbara A. Silverman, Miami, for appellant.
Wetherington, Klein & Hubbart and Phillip A. Hubbart, Miami; Tralins and Associates and Myles J. Tralins, Miami, for appellee.
Before GODERICH, GREEN, and RAMIREZ, JJ.
PER CURIAM.
This is an appeal from a final judgment, following a jury verdict in favor of the appellee, Wilma Miller ("Miller"), in a medical malpractice action against the appellant, Norman Kenyon, M.D. ("Dr. Kenyon"). Because we find that it was harmful error for the trial court to give the jury a res ipsa loquitur instruction, in this case, we reverse and remand for a new trial.
Dr. Kenyon operated on Miller to repair an incisional hernia resulting from a previous hysterectomy. In making the repair, Dr. Kenyon utilized a surgical mesh which is intended to incorporate with the body tissue, adding additional support to the hernia's closure site. A known complication of this procedure is that the mesh may become infected, not incorporate into the tissue, and require additional surgery to remove the infected mesh. Miller developed such an infection and Dr. Kenyon performed a second surgery to remove the infected portion of the mesh. Approximately a year later, the infection recurred and Miller had to undergo a third surgery, which was performed by Dr. Kenyon's partner, Dr. Tershakovec. Dr. Tershakovec removed additional infected mesh, as well as some sutures and staples that were used to attach the mesh. Miller has since healed and has had no further complaints.
Miller brought this medical malpractice action against Dr. Kenyon claiming that the doctor's failure to remove all of the mesh that had originally been placed in her constituted negligence. In fact, Miller's expert, Dr. Esterkyn, testified that, during the second surgery, Dr. Kenyon was negligent in not removing all the mesh that he had originally placed in Miller. Specifically, Dr. Esterkyn testified:
Q. With respect to the mesh infection, doctor, does the standard or care require that once that mesh is infected that it be removed?
A. Yes. Once you decide to go there to take it out, you need to remove all the mesh.
Q. Doctor, do you have an opinion based on reasonable medical certainty whether Dr. Kenyon departed from the standard of care in his care and treatment of Ms. Miller?
A. Yes. I feel that he was negligent in not removing the foreign material at the first [sic] operation because it's mandatory once this mesh becomes infected to take it out and theand as much of the suture material as *135 possible also. But the mesh is the main culprit and has to be taken out.
Conversely, Dr. Kenyon testified that he had cleaned and removed all of the unincorporated mesh, and to remove anything further would have been inappropriate. Similarly, Dr. Tershakovec testified that a doctor can only remove unincorporated mesh, because the removal of incorporated mesh would require a doctor to chisel the mesh out of the tissue, thereby causing the body tissue damage. Moreover, Dr. Kenyon's expert, Dr. Moylan, testified:
Q. Doctor, in performing surgery such as what was done by Dr. Kenyon on October 19, 1993 for abscess of an operative wound site with infected mesh, is it a deviation from the standard of care not to remove the entire mesh?
A. No, you remove the mesh that is free and involved in the infection. If there is mesh that has been incorporated into the tissue, the principle would be to leave that. It would be injurious to disrupt the fibrosis and healing process in that mesh that is not involved in the infection.
* * * *
In fact the standard practice is when you have a piece of infected mesh you remove only the part that is infected and you leave any that is incorporated. Sometimes you don't even know there is residual incorporated because the fibrous nature of the healing process hides that from you and it would be inappropriate to unroof it at that time.
Despite this clearly conflicting expert testimony, during the charge conference, Miller's counsel requested that Florida Standard Jury Instruction (Civil) 4.6 (the res ipsa loquitor instruction), be read to the jury.[1] Dr. Kenyon's counsel objected to the use of the res ipsa instruction. Over objection, the trial court allowed the instruction. As a result, during closing argument, Miller's counsel argued that expert testimony in this case was unnecessary because the negligence here essentially spoke for itself. Thereafter, the jury was charged:
If you find that the circumstances of the occurrence were such that in the ordinary course of events it would not have happened in the absence of negligence and that the instrumentality causing an injury was in [the] exclusive control of the Defendant at the time it caused the injury, you may infer that Defendant, Norman Kenyon, M.D., was negligent, unless taking into consideration all of the evidence in this case you can conclude that the occurrence was not due to any negligence on the part of the Defendant.
Dr. Kenyon's counsel renewed his objection to the instruction.
The jury returned a verdict in favor of Miller in the amount of $150,000. Dr. Kenyon moved for a new trial on grounds, among others, that the trial court erred in giving the res ipsa loquitur instruction. The motion for new trial was ultimately denied. This appeal followed.
The key issue for the jury's determination in this case was whether Dr. Kenyon exercised reasonable care during Miller's second surgery by removing only the unincorporated and/or infected mesh, or whether he was negligent in failing to remove all of the mesh that he had originally put in during the first surgery. Both sides presented *136 evidence which explained how Miller's injury occurred. Moreover, the expert testimony regarding reasonable care was directly conflicting. Thus, the issue of whether Dr. Kenyon fell below the standard of care and was therefore negligent, should have been left to the jury based upon their assessment of the credibility of the expert witnesses.
Instead, the trial court's res ipsa instruction improperly permitted the jury to disregard the conflicting expert testimony and infer negligence solely on the facts that all of the mesh in Miller's body was not removed during the second surgery, and that Miller's infection recurred nearly a year and a half later. The law is clear that "[n]egligence cannot be inferred from the fact that the surgery was unsuccessful or terminated in unfortunate results." Sims v. Helms, 345 So.2d 721, 723 (Fla.1977)(citing Bourgeois v. Dade County, 99 So.2d 575 (Fla.1956); Hill v. Boughton, 146 Fla. 505, 1 So.2d 610 (1941); Anderson v. Gordon, 334 So.2d 107 (Fla. 3d DCA 1976)). Moreover, the mere fact that a doctor's treatment was unsuccessful or terminated with poor results is not sufficient to invoke the doctrine of res ipsa loquitur. See Anderson, 334 So.2d at 109, (citing Trotter v. Hewett, 163 So.2d 510 (Fla. 3d DCA 1964)).
To state a claim under the res ipsa loquitur doctrine an injured plaintiff must establish two things: 1) that the cause of his or her injury was under the exclusive control of the defendant, and 2) that the injury would not, in the ordinary course of events, have occurred without negligence on the part of the defendant, who was in control. See Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So.2d 1339, 1341-42 (Fla.1978). Moreover, this court has previously recognized:
Given the restrictive nature of the doctrine [of res ipsa loquitur], a court should never lightly provide this inference of negligence. Rather it is incumbent on the plaintiff to present his or her case in a manner which demonstrates and satisfies each of the doctrine's requisite elements and only after the plaintiff carries this burden of proof may a court supply the inference.
Metropolitan Dade County v. St. Claire, 445 So.2d 614, 617 (Fla. 3d DCA 1984)(quoting City of New Smyrna Bch. Util. Comm'n v. McWhorter, 418 So.2d 261, 262 (Fla.1982)).
Miller contends that she met the requirements of res ipsa loquitur, in this case, because she was unconscious during the surgery and because a foreign body (i.e. the surgical mesh that was placed in her body as part of the hernia repair), was found in her body during the third surgery, which is prima facie evidence of negligence under section 766.102(4), Florida Statutes (1993).[2] We disagree.
The mere fact that the plaintiff is unconscious during surgery is not, by itself, sufficient to satisfy the first element of invoking res ipsa loquitur. Rather, the case law holds that it is the combination of an unconscious plaintiff with an unexplained injury which is unrelated to the surgical procedure or treatment which justifies the res ipsa inference. See Marrero v. Goldsmith, 486 So.2d 530 (Fla.1986); Borghese v. Bartley, 402 So.2d 475 (Fla. 1st DCA 1981). Moreover, the provision of section 766.102(4) that discovery of a "foreign body" such as surgical paraphernalia *137 is prima facie evidence of negligence, is clearly inapplicable in a case such as this where the mesh was intentionally placed in Miller's body as part of her treatment, and like screws, plates, pacemakers, and/or artificial joints was intended to permanently remain in her body.
Thus, based upon the above the trial court committed reversible error when it gave the jury the res ipsa loquitur instruction, requested by Miller, see Wal-Mart Stores, Inc. v. Rogers, 714 So.2d 577, 579 (Fla. 1st DCA 1998)(error in giving unsupported res ipsa loquitur instruction cannot be deemed harmless); St. Claire, 445 So.2d at 618 (the giving of a res ipsa loquitur instruction which erroneously shifted the burden of proof cannot be considered harmless); and we reverse and remand this case for a new trial.
In light of the reversible error found in the appellant's first issue on appeal, we find no reason to address the remaining issue raised in this appeal.
Reversed and remanded.
NOTES
[1] Florida Standard Jury Instruction 4.6 provides, in pertinent part, that:

If you find that the circumstances of the occurrence were such that, in the ordinary course of events, it would not have happened in the absence of negligence, and that the instrumentality causing an injury was in the exclusive control of the defendant at the time it cause the injury, you may infer that the defendant was negligent unless, taking into consideration all of the evidence in the case, you conclude that the occurrence was not due to any negligence on the part of the defendant.
[2] Section 766.102(4) provides in pertinent part:

(4) The existence of a medical injury shall not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care by the health care provider. However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination or diagnostic procedures, shall be prima facie evidence of negligence on the part of the health care provider.