# Supreme Court of Florida

_____

No. SC15-2294
_____

**SIMON DOCKSWELL, et al.,**
Petitioners,

vs.

**BETHESDA MEMORIAL HOSPITAL, INC., etc.,**
Respondent.

[January 26, 2017]

PARIENTE, J.

The issue presented involves the interpretation of section 766.102(3)(b), Florida Statutes (2011) (the foreign-body presumption of negligence)—specifically whether, in a medical malpractice case involving a foreign body left inside a patient's body, the burden of proof shifts to the defendant to prove that no medical negligence occurred.

The foreign-body presumption of negligence set forth in section 766.102(3)(b) provides:

> [T]he discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination, or diagnostic procedures, shall be prima facie evidence of negligence on the part of the health care provider.

(Emphasis added.)

In Dockswell v. Bethesda Memorial Hospital, Inc., 177 So. 3d 270 (Fla. 4th DCA 2015), the Fourth District determined that when direct evidence of negligence exists, the plaintiff is not entitled to the statutory presumption arising from section 766.102(3)(b). We have jurisdiction based on express and direct conflict with Kenyon v. Miller, 756 So. 2d 133 (Fla. 3d DCA 2000). See art. V, § 3(b)(3), Fla. Const.

After analyzing the statute and relevant case law, we conclude, consistent with the analysis of Judge Conner's dissent in Dockswell, that the foreign-body presumption of negligence set forth in section 766.102(3)(b) is mandatory when a foreign body is found inside the patient's body, regardless of whether direct evidence exists of negligence or who the responsible party is for the foreign body's presence. Accordingly, for the reasons more fully explained below, we quash the decision of the Fourth District Court of Appeal.

# BACKGROUND

On April 29, 2011, Simon Dockswell was admitted to Respondent's

Bethesda Memorial Hospital for a "colon resection due to cancerous polyps." As

part of the procedure, surgeon George Mueller, M.D., inserted a drainage tube into

Mr. Dockswell's abdominal cavity "to evacuate the fluid postoperatively."

Drainage tubes of this sort are usually removed after surgery at the direction of the

physician.

In preparation for Simon Dockswell's discharge a few days after surgery, a

nurse removed the drainage tube. Evidence identifies Nurse Porges as the nurse

who removed the drainage tube. Mrs. Dockswell was present in Mr. Dockswell's

hospital room while the nurse removed the drainage tube. Testimony revealed that

it was questionable whether Dr. Mueller actually instructed that the drainage tube

be removed. Nevertheless, during the drainage tube removal, "Mr. Dockswell

experienced no immediate discomfort, but a 4.25-inch section of the tube was

<u>unknowingly</u> left inside him." <u>Dockswell</u>, 177 So. 2d at 271 (emphasis added). It

is undisputed that the drainage tube was left inside Mr. Dockswell through no fault

of his own.

Mr. Dockswell was discharged from Bethesda Memorial Hospital's facility

on May 3, 2011. The Fourth District explained the subsequent facts as follows:

> Approximately four months later, after Mr. Dockswell experienced
> continuing pain in the region, a CT scan revealed that a portion of the

drain remained in his body. A second surgery was performed to remove the remaining piece of the drain.

The Dockswells filed suit against the hospital alleging, among other claims, that 1) the tube was negligently removed with excessive speed and force, and 2) the nurse negligently failed to inspect the drainage tube to ensure that it was removed entirely, which resulted in the tube fragment being overlooked. . . .

At the charge conference, the Dockswells sought a jury instruction establishing a presumption of negligence against the hospital because of the presence of the tube fragment.

Dockswell, 177 So. 3d at 271.

At trial, the Dockswells requested Florida Standard Jury Instruction 402.4c, which states:

[Negligence is the failure to use reasonable care.] The presence of (name of foreign body) in (patient's) body establishes negligence unless (defendant(s)) prove(s) by the greater weight of the evidence that [he] [she] [it] was not negligent.

Bethesda Memorial Hospital opposed the Dockswells' request, arguing "that the presumption of negligence does not apply in instances where the plaintiff is aware of and has evidence of the culpable party." Dockswell, 177 So. 3d at 271.

The parties also disputed whether Florida Standard Jury Instruction 402.4c ("Instruction 402.4c") applied to both of the Dockswells' theories of negligence— negligent removal and negligent inspection—or only to the theory of negligent inspection. See id. at 271-72. The Dockswells argued that Instruction 402.4c was equally applicable to both of their theories under the common claim of negligence, specifically that their action arose from medical malpractice. Bethesda Memorial

- 4 -

Hospital argued "that the foreign body instruction is inapplicable to the first of the Dockswells' two claims . . . since the instruction . . . would be applicable only as to the nurse's alleged failure to inspect which then resulted in the tube being left behind for a later medical discovery." Id. at 271.

The trial court ultimately denied the Dockswells' request for Instruction 402.4c, reasoning that the Dockswells' ability to identify Nurse Porges as the person who removed the drainage tube rendered the Instruction inapplicable. Further, the trial court reasoned that "the word 'discovery' in section 766.102[(3)(b)] (and thus the instruction) suggests a situation where a patient is uncertain as to where responsibility for negligence lies." Id. at 272. Because the trial court determined that the foreign-body presumption was inapplicable, over the Dockswells' objection, it used a nonstandard jury instruction, requested by Bethesda Memorial Hospital, which provided:

> The existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately cause[d] by a breach of the prevailing professional standard of care by the health care provider.

The verdict form instructed the jury to first determine whether "there was negligence on the part of BETHESDA MEMORIAL, INC. which was a legal cause of loss, injury or damage to SIMON DOCKSWELL." The jury answered this question in the negative. Because the jury answered this first question in the

- 5 -

negative, it was instructed to proceed no further and sign the jury verdict form. Accordingly, the jury returned a verdict for Bethesda Memorial Hospital, and the trial court entered judgment consistent with the verdict. The trial court denied the Dockswells' Motion for New Trial and Supplemental Motion for New Trial after a hearing on the parties' arguments regarding the applicability of Instruction 402.4c.

The Dockswells appealed to the Fourth District, arguing that the discovery of the drainage tube fragment inside Mr. Dockswell entitled them to Instruction 402.4c, which would have created a presumption of negligence and shifted the burden to Bethesda Memorial Hospital to disprove liability. Dockswell, 177 So. 3d at 274. The Fourth District rejected the Dockswells' argument, agreeing with the trial court that the foreign-body presumption in section 766.102(3)(b) and, thus, Instruction 402.4c were inapplicable.

The Fourth District first stated that "the statute is a codification of the doctrine of res ipsa loquitur in the medical negligence context." Id. at 272. The Fourth District then determined that "[t]here were no genuine doubts surrounding the identity of the allegedly culpable party or the events that led to the [drainage] tube being left inside of Mr. Dockswell by the time th[e] case went to trial" because (1) the Dockswells "were able to present direct evidence of negligence," (2) Mr. Dockswell was conscious while the nurse removed the drain, and (3) Mrs. Dockswell was present during the removal. Id. at 273. Thus, the Fourth District

- 6 -

concluded that the foreign-body presumption of negligence and Instruction 402.4c "w[ere] not necessary to allow the jury to resolve the issues in the case." Id.

Judge Conner dissented, arguing that the majority improperly analyzed whether res ipsa loquitur applied, as opposed to the Dockswells' entitlement to the statutory foreign-body presumption. Id. at 274 (Conner, J., dissenting). He explained that there were legal distinctions between the foreign-body presumption and res ipsa loquitur that the majority ignored. Id. Because a foreign body was left in Mr. Dockswell, Judge Conner concluded that the Dockswells were, in fact, entitled to the benefit of the statutory presumption and that it was error for the trial court not to give Instruction 402.4c.

The Dockswells petitioned for review, and this Court accepted jurisdiction based on express and direct conflict between the Fourth District's decision in this case and the Third District's decision in Kenyon.

## ANALYSIS

The issue in this case involves the interpretation of the foreign-body presumption, as codified in section 766.102(3)(b), specifically whether, in a medical malpractice case involving a foreign body left in a patient, the burden of proof shifts to the defendant to prove that no medical negligence occurred.[1] We

---

1. We use "presumption" throughout to characterize section 766.102(3)(b), Florida Statutes, even though the statutory language provides for "prima facie evidence" because, as we explained in State v. Rolle, 560 So. 2d 1154 (Fla. 1990),

conclude that, unlike the common law doctrine of res ipsa where direct evidence of negligence may defeat its application, the only prerequisite to applying the foreign-body presumption and Instruction 402.4c is the "discovery of the presence of a foreign body" in the patient's body.  § 766.102(3)(b), Fla. Stat.

We begin with an explanation of section 766.102(3)(b) and part of the medical malpractice statutory scheme and then distinguish the statutory foreign-body exception from the common law doctrine of res ipsa loquitur.  Turning to this case, we conclude that the presence of the drainage tube fragment in Mr. Dockswell's body following discharge from Bethesda Memorial Hospital entitled the Dockswells to the benefit of the foreign-body presumption in section 766.102(3)(b) and Instruction 402.4c.  We also conclude that the failure to give Instruction 402.4c as well as the trial court's giving of a nonstandard instruction cannot be considered harmless error.

## II.  Section 766.102(3)(b) (the Foreign-Body Presumption of Negligence)

Over the years, the Legislature has restricted plaintiffs' ability to bring medical malpractice claims, including through the addition of a presuit process, with the requirement that plaintiffs secure the testimony of experts in the same or a

_____

when prima facie evidence of an elemental fact exists based on the existence of a basic fact, a presumption exists, shifting the burden of proof.  Id. at 1156 (quoting Cty. Court v. Allen, 442 U.S. 140, 157 (1979)); accord Francis v. Franklin, 471 U.S. 307, 314-15 (1985); Turner v. United States, 396 U.S. 398, 423 (1970).

similar medical area.[2]  The foreign-body presumption of negligence, however, has survived throughout the legislative amendments restricting the ability of medical malpractice plaintiffs to bring claims.

Because determining the applicability of section 766.102(3)(b) involves an issue of statutory interpretation, our review is de novo.  Bay Cty. v. Town of Cedar Grove, 992 So. 2d 164, 167 (Fla. 2008).  "Our guiding principle when construing a statute is to 'effectuate the intent of the Legislature.' "  State v. Weeks, 202 So. 3d 1, 7 (Fla. 2016) (qouting Borden v. East-European Ins. Co., 921 So. 2d 587, 595

---

2.  In 1985, the Legislature implemented a "complex presuit investigation" before a medical malpractice case could even be filed pursuant to chapter 766, Florida Statutes.  Ch. 85-175, Laws of Fla.; see § 768.57, Fla. Stat. (1985); see also Kukral v. Mekras, 679 So. 2d 278, 280-81 (Fla. 1996).  In 1988, these presuit procedures were recodified at chapter 766, Florida Statutes.  Unlike the law applicable to other, general negligence cases, chapter 766 precludes the filing of a medical negligence action "unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant."  § 766.104(1), Fla. Stat. (2016).  It also provides that "good faith" may be shown if the claimant or his counsel has received a written opinion of an expert "that there appears to be evidence of medical negligence."  Id. (citing § 766.102, Fla. Stat. (2016) (defining "expert")).

Further, the statute defines "investigation" in this context to mean "that an attorney has reviewed the case against each and every potential defendant" and has consulted with and obtained a written opinion from a medical expert.  Id. § 766.202(5).  After completing the statutory presuit investigation, but prior to filing a claim for medical malpractice, the claimant must also notify each prospective defendant "of intent to initiate medical malpractice litigation."  Id. § 766.203(3).

In 2013, the Florida Legislature passed the Florida Medical Malpractice Act, ch. 2013-108, Laws of Fla., which placed further restrictions on plaintiffs' ability to prove their cases by revising qualifications to give expert testimony on the prevailing standard of care.

(Fla. 2006)).  "[L]egislative intent is determined primarily from the statute's text."

Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007).

We thus review the statute's text to determine if the limitation placed on it

by the trial court and the Fourth District—that a plaintiff is entitled to the foreign-

body presumption of negligence only in the absence of direct evidence of

negligence—is consistent with the actual language of the statute.  We turn first to

the text of section 766.102, Florida Statutes, which provides both for the general

proposition that in medical negligence cases the plaintiff bears the burden of proof

of medical negligence and specifies in detail what the plaintiff must prove:

> (1)  In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 766.202(4), <u>the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider.</u>  The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
> (2)(a)  If the injury is claimed to have resulted from the negligent affirmative medical intervention of the health care provider, the claimant must, in order to prove a breach of the prevailing professional standard of care, show that the injury was not within the necessary or reasonably foreseeable results of the surgical, medicinal, or diagnostic procedure constituting the medical intervention, if the intervention from which the injury is alleged to have resulted was carried out in accordance with the prevailing professional standard of care by a reasonably prudent similar health care provider.

§ 766.102, Fla. Stat. (2016) (emphasis added).

The Legislature then sets forth the specific exception for foreign bodies:

> (3) . . . .
> (b) The existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care by the health care provider. . . . However, the discovery of the presence of a foreign body, such as a sponge, clamp, forceps, surgical needle, or other paraphernalia commonly used in surgical, examination, or diagnostic procedures, shall be prima facie evidence of negligence on the part of the health care provider.

Id. (emphasis added).[3]

Subsection (3)(b) states that foreign-body cases are a class of medical malpractice cases in which the Legislature has given a singular benefit to plaintiffs. See id. § 766.102(3)(b) (2016). Under the plain language of the statute, specifically the first sentence of section 766.102(3)(b), the burden in ordinary medical malpractice suits lies with the plaintiff to prove that the defendant was negligent, or breached "the prevailing professional standard of care for that health care provider." Id. § 766.102(1); accord id. § 766.102 (3)(b). However, the third sentence of subsection (3)(b) provides that the burden shifts upon the "discovery"

_____

3. This language has not changed since 2011. See § 766.102(3)(b), Fla. Stat. (2011). Also, before 2003, the foreign-body statutory presumption was codified at section 766.102(4), Florida Statutes. See, e.g., § 766.102(4), Fla. Stat. (2002).

- 11 -

of a foreign body, which constitutes "prima facie evidence of negligence on the part of the health care provider." Id.

If there is any issue in interpreting the Legislature's intent for the third sentence of section 766.102(3)(b), it turns on the use of the word "discovery," which is what triggers the application of the foreign-body presumption and the accompanying Instruction 402.4c. "In ascertaining the plain meaning of statutory language, consulting dictionary definitions is appropriate." Weeks, 202 So. 3d at 7 (citing License Acquisitions, LLC v. Debary Real Estate Holdings, LLC, 155 So. 3d 1137, 1144 (Fla. 2014)).[4] Hence, Judge Conner appropriately used the dictionary definition of the word "discovery" to determine the trigger for applying the foreign-body presumption in subsection (3)(b):

> "[D]iscovery," . . . simply connotes that the foreign body remaining in the patient's body was an unintended consequence of the medical procedure. According to Webster's dictionary, "discovery" means "the act or process of discovering." Merriam–Webster's Seventh New Collegiate Dictionary (1969). To "discover" means "to obtain sight or knowledge of for the first time." Id. According to Webster's, a synonym for "discover" is "unearth," which "implies bringing to light something forgotten or hidden." Id.
>  . . . .
> I contend the last sentence of section 766.102(3)(b) is a recognition by the legislature that the first sentence of the section places too onerous a burden on the claimant to show a breach of the standard of care, when the universe of explanations for why a foreign body remained includes doctor error, nurse error, and product defect.

---

4. See also L.B. v. State, 700 So. 2d 370, 372 (Fla. 1997).

- 12 -

Dockswell, 177 So. 3d at 275-76 (Conner, J., dissenting). We conclude that Judge Conner's interpretation of "discovery" is correct: when it is determined that a foreign body improperly exists inside a patient, a presumption of negligence has been established.

We next address the effect, if any, of other evidence or knowledge of the identity of the specific actor responsible for leaving the foreign body may have on the applicability of the foreign-body presumption in section 766.102(3)(b). Reviewing the statutory text, there is absolutely no indication that a litigant must prove, in addition to the presence of the foreign body, the absence of direct evidence of how the foreign body was left in the patient for the foreign-body presumption to apply. Rather, as Judge Conner's dissent explained, "If a set of facts entitles one to a legal determination that prima facie evidence of negligence is established, additional affirmative evidence of negligence does not erase the prima facie determination." Id. at 277. Further:

> The first sentence of section 766.102(3)(b) codifies the principle that a medical injury does not create any inference or presumption of negligence by a health care provider. . . . The last sentence of section 766.102(3)(b) provides an exception to the general rule established by the first sentence. The last sentence provides, in essence, that if a medical procedure has the unintended result of leaving a foreign body in the patient's body after the procedure is completed, that fact alone is prima facie evidence of negligence on the part of the health care provider.

Id. at 275 (some emphasis added) (footnote omitted).  Likewise, Judge Conner

noted the absence of language limiting the application of the presumption:

> In recognizing that the legislature codified an important
> exception relating to foreign bodies, our supreme court adopted . . .
> Instruction (Civil) 402.4c . . . .  [T]he trial court agreed, that standard
> instruction 402.4c was only applicable to a theory of liability in which
> the claimant had no knowledge or proof of how or why the drainage
> tube broke.  . . .  But if the legislature intended the statute to apply the
> way the trial court construed it, the legislature could have simply said
> that if an unintended foreign body remains after a medical procedure
> and the claimant cannot prove why or how it happened, then the fact
> the foreign body remained is prima facie evidence of negligence by
> the medical provider.

Id. (some emphasis added).

As Judge Conner explained, when a foreign body is found, or discovered, a

presumption of negligence on the part of the health care provider is established.  At

that point, the burden lies with the health care provider to explain how the foreign

body was left inside the patient as a result of some factor other than his or her

negligence.  This interpretation of the statute is consistent with the Fourth

District's earlier decision in Castillo v. Visual Health & Surgical Ctr., Inc., 972 So.

2d 254 (Fla. 4th DCA 2008).  In Castillo, the trial court applied section 766.102(3)

and denied a directed verdict for the patient.  The Fourth District affirmed, stating:

> Section 766.102(3) provides that "the discovery of the presence of a
> foreign body, such as a sponge . . . or other paraphernalia commonly
> used in surgical, examination, or diagnostic procedures, shall be prima
> facie evidence of negligence on the part of the health care provider."
> . . .

- 14 -

The parties have not cited, nor has our own research revealed any Florida case law interpreting section 766.102(3), Florida Statutes. We agree . . . that the burden, when shifted to the defendant[s], cannot be met by pure speculation and conjecture. . . . The jury is free to accept or reject any of this testimony. <u>The trial court did not err in making it a jury question as to whether the defense met their burden in overcoming the presumption created by section 766.102(3), Florida Statutes.</u>

    . . . .

[W]e affirm as the trial court did not err in making it a jury question as to whether the defense met their burden in overcoming the presumption created by section 766.102(3), Florida Statutes.

<u>Id.</u> at 256-57 (emphasis added).

Rather than a tool to <u>help</u> the jury determine the appropriate outcome in the case only when needed, the text of the statute indicates that the foreign-body presumption shifts the burden to health care providers to prove that they were not negligent in treating the patient. Likewise, Instruction 402.4c, derived from section 766.102(3) and adopted by this Court in 2010, states:

[Negligence is the failure to use reasonable care.] The presence of (name of foreign body) in (patient's) body establishes negligence unless (defendant(s)) prove(s) by the greater weight of the evidence that [he] [she] [it] was not negligent.

Fla. Std. Jury Instr. (Civ.) 402.4c; <u>In re Std. Jury Instrs. in Civil Cases—Report No. 09-01 (Reorganization of the Civil Jury Instrs.)</u>, 35 So. 3d 666 (Fla. 2010) (adopting Florida Standard Jury Instruction 402.4c).

As we explained when we adopted Instruction 402.4c, "Instruction 402.4c substitutes plain English for the language in former instruction 4.2 pertaining to a

- 15 -

claim for medical negligence, based upon the presence of a foreign object in a patient's body." Std. Jury Instrs. in Civil Cases-Report No. 09-01, 35 So. 3d at 670. Further, the Notes on Use for Instruction 402.4c state:

> 1. This instruction is derived from F.S. 766.102(3). The statute uses the term "prima facie evidence of negligence." The committee recommends that term not be used as not helpful to a jury. Rather, the committee has used the definition of prima facie. See, e.g., State v. Kahler, 232 So. 2d 166, 168 (Fla. 1970) ("prima facie" means "evidence sufficient to establish a fact unless and until rebutted").

> 2. Before this instruction is given, the court must make a finding that the foreign body is one that meets the statutory definition. See Kenyon v. Miller, 756 So. 2d 133 (Fla. 3d DCA 2000).

Id. at 705.

Thus, under the plain language of the statute and the Notes on Use of Instruction 402.4c, the existence of a foreign body invokes the statutory presumption of negligence in section 766.102(3)(b), entitling the plaintiff to the benefit of Instruction 402.4c, regardless of the evidence available to either party. Because the trial court refused to give Instruction 402.4c, concluding that it was not "necessary," and the Fourth District conflated the common law doctrine of res ipsa loquitur with the statutory foreign-body presumption, we now turn to an explanation of the distinction between the foreign-body presumption and the common law doctrine of res ipsa loquitur.

## II. Differences Between Section 766.102(3)(b) and Common Law Res Ipsa Loquitur

We conclude that the Fourth District made a foundational error when it stated that the statutory foreign-body presumption "is a codification of the doctrine of res ipsa loquitur in the medical negligence context." Dockswell, 177 So. 3d at 272. Res ipsa loquitur is a part of the common law on negligence and functions as a rule of evidence under which plaintiff's initial burden is met when res ipsa loquitur is applied. In Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So. 2d 1339 (Fla. 1978), this Court explained the common law doctrine of res ipsa loquitur:

> Res ipsa loquitur "the thing speaks for itself" is a doctrine of extremely limited applicability. It provides an injured plaintiff with a common-sense inference of negligence where direct proof of negligence is wanting, provided certain elements consistent with negligent behavior are present. Essentially, the injured plaintiff must establish that the instrumentality causing his or her injury was under the exclusive control of the defendant, and that the accident is one that would not, in the ordinary course of events, have occurred without negligence on the part of the one in control. . . .
> Plainly, the threshold inquiry is whether that which occurred is a phenomenon which does not ordinarily happen except in the absence of due care. The initial burden is on the plaintiff to establish that the circumstances attendant to the injury are such that, in the light of past experience, negligence is the probable cause and the defendant is the probable actor. An injury standing alone, of course, ordinarily does not indicate negligence. The doctrine of res ipsa loquitur simply recognizes that in rare instances an injury may permit an inference of negligence if coupled with a sufficient showing of its immediate, precipitating cause.

Id. at 1341-42 (emphasis added) (footnotes omitted).

A classic example of res ipsa loquitur is a heavy object falling from an elevated position and causing damage. In that situation, where it is clear that the object would not have fallen absent negligence, res ipsa directs that even if the injured party may not be able to explain how or why the object fell, the plaintiff is entitled to a presumption of negligence despite the lack of evidence.[5] As we explained in Goodyear Tire, to establish that res ipsa is appropriate, a plaintiff must show that, although there is no direct evidence of negligence, the instrumentality that caused the injury was in the exclusive control of the defendant, and the injury would not have happened absent negligence. 358 So. 2d at 1341-42.

One form of negligence, of course, is medical malpractice, in which an injured party sues a health care provider for breaching the duty of care owed by that professional to the patient, causing injury or death.

Before the foreign-body presumption, which was first enacted in 1985, this Court endeavored to apply res ipsa to medical malpractice cases; but, in fact, it

---

5. See, e.g., McDougald v. Perry, 716 So. 2d 783, 786 (Fla. 1998) (holding that res ipsa loquitur was applicable when a "spare tire escap[ed] from the cradle underneath the truck, resulting in the tire ultimately becoming airborne and crashing into [Petitioner's] vehicle"); Am. Dist. Elec. Protective Co. v. Seaboard Air Line Ry. Co., 177 So. 294, 295 (Fla. 1937) (holding that res ipsa loquitur was applicable when a protective company for a railway "allowed a wire, comprising a part of [the] protective company's signal system, to sag over the railway company's tracks by reason of neglect and which an employee of the railway company was knocked from a freight car passing under same, and thereby seriously injured").

appears to have applied negligence per se. For example, in <u>South Florida Hospital</u>

<u>Corp. v. McCrea</u>, 118 So. 2d 25, 26 (Fla. 1960), South Florida Hospital sought this

Court's review of a jury verdict and judgment for McCrea for an injury sustained

during surgery. On appeal, South Florida Hospital argued that it was inappropriate

for the trial court to instruct the jury on res ipsa loquitur. <u>Id.</u> at 27. Discharging a

writ of certiorari for lack of jurisdiction due to an absence of conflict, this Court

explained:

> <u>A plaintiff is not precluded from resorting to the doctrine of res ipsa loquitur merely because he introduces evidence of specific negligence attributable to the defendant.</u>
> This expression of the stated point or principle of law necessarily is based upon an assumption that the doctrine of res ipsa loquitur would unquestionably apply if the plaintiff had not offered or introduced evidence of specific acts or omissions in an effort to prove the issue of actionable negligence of the defendant.

<u>Id.</u> at 28. The <u>McCrea</u> Court went on to explain that case law is split on the type

and amount of evidence that precludes appropriate application of res ipsa,

resolving that "the majority rule seems to be that the introduction of evidence of

specific negligence which does not clearly establish the precise cause of the injury,

will not preclude reliance on the otherwise-applicable res ipsa doctrine." <u>Id.</u> at 29.

Elaborating on precedent, the <u>McCrea</u> Court stated that the universal rule is "that

'there is no need or room for the operation of any inference or presumption under

the res ipsa loquitur doctrine where the evidence . . . reveals all of the facts and

circumstances surrounding the occurrence in suit and clearly establishes the precise

- 19 -

cause of plaintiff's injury.' " <u>Id.</u> at 30.  This Court affirmed that "Florida [is] among those jurisdictions which hold that the plaintiff may, in a proper case, resort to both evidence of specific negligence and to the inferences and presumptions of the doctrine of res ipsa." <u>Id.</u> at 29.  Thus, the Fourth District's holding in <u>Dockswell</u> that available evidence and Instruction 402.4c are mutually exclusive was inconsistent with this Court's holding in <u>McCrea</u>.

Similarly, in <u>Marrero v. Goldsmith</u>, 486 So. 2d 530 (Fla. 1986), this Court accepted jurisdiction due to express and direct conflict between the Third District Court of Appeal's decision and this Court's opinion in <u>McCrea</u>.  In <u>Marrero</u>, the plaintiff experienced complications unrelated to treatment following surgery during which she was unconscious.  <u>Id.</u> at 531.  Under the facts, this Court "allow[ed] the plaintiff to go to the jury with the benefit of a res ipsa loquitur instruction," <u>id.</u> at 533, stating:

> If a case is a proper res ipsa case in other respects, the presence of some direct evidence of negligence should not deprive the plaintiff of the res ipsa inference.  There comes a point, however, when a plaintiff can introduce enough direct evidence of negligence to dispel the need for the inference.

<u>Id.</u> at 532.  The <u>Marrero</u> Court found instructive the California Supreme Court's reasoning in the landmark case of <u>Ybarra v. Spangard</u>, 154 P.2d 687, 690 (Cal. 1944), which held:

> The control at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff

was in the hands of every defendant or of his employees or temporary servants.  This, we think, places upon them the burden of initial explanation.

The bottom line of the common law on res ipsa loquitur is that evidence of negligence may cause the presumption to "vanish," although that is not necessarily how this Court has applied the doctrine in medical negligence cases.  Nevertheless, traditional res ipsa loquitur case law stands for the proposition that before res ipsa loquitur may be applied, the plaintiff must make requisite showings of the defendant's control of the object and that negligence was the cause of the injury.  Res ipsa loquitur is defeated only when the plaintiff's evidence, on its own, establishes each element of negligence.  This is logically sound because if the evidence is sufficient to present a prima facie case of negligence, the presumption of res ipsa is moot.

We now turn to foreign-body law, a specific subset of medical malpractice cases, which concern those cases where a foreign body is unintentionally left inside the body of a patient.  Judge Conner discussed the origins of the foreign-body presumption in his dissent in Dockswell:

> [T]he last sentence of section 766.102(3)(b) codifies and expands "the Zeagler Rule" espoused in our case law during the 1930's in Smith v. Zeagler, 116 Fla. 628, 157 So. 328 (1934).  In Zeagler, our supreme court said that "[t]he burden of showing due care is upon a surgeon who leaves a sponge inclosed [sic] in a wound after the performance of an operation."  Id. at 329.  The court went on to hold that leaving a sponge inside the patient during the surgery process was negligence per se.  Id. ("The authorities are legion to the effect that it is

- 21 -

negligence per se for a surgeon to leave a sponge in an abdominal incision made in his patient in the course of his performance of a surgical operation upon such patient.") (citations omitted).

177 So. 3d at 275-76 (Conner, J., dissenting). Therefore, different from common law res ipsa loquitur, the statutory foreign-body presumption is one that provides plaintiffs with a presumption of negligence even if direct evidence of negligence exists.

Thus, we conclude that the comparison between foreign-body law—specifically section 766.102(3)(b) and Instruction 402.4c—and res ipsa begins and ends with their effect: imposing a prima facie case of negligence and shifting the burden to the defendant. As to the effect of the foreign-body presumption, specifically that "prima facie evidence" is established, we conclude that as interpreted above, the foreign-body presumption is a mandatory presumption, which "tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." State v. Rolle, 560 So. 2d 1154, 1156 (Fla. 1990) (alteration in original) (quoting Cty. Court v. Allen, 442 U.S. at 157). "A mandatory presumption may be either irrebuttable or rebuttable. . . . The fact finder, however, is not free to reject the presumption." Ibarrondo v. State, 1 So. 3d 226, 233 (Fla. 5th DCA 2008). In other words, the foreign-body presumption is mandatory when applicable but rebuttable by the opponent.

- 22 -

In conclusion, the contexts in which the foreign-body presumption and res ipsa loquitur are applied make the two completely distinguishable. In the conflict case, Kenyon, the Third District correctly distinguished between res ipsa loquitur and the foreign-body presumption. 756 So. 2d at 137. The Kenyon court explained that the presence of a "foreign body," such as surgical paraphernalia, is prima facie evidence of negligence, but the foreign-body presumption is "clearly inapplicable in a case such as this where the [foreign body] was intentionally placed in [the plaintiff's] body as part of her treatment, and like screws, plates, pacemakers, and/or artificial joints was intended to permanently remain in her body." Id. Thus, Kenyon makes clear that the foreign-body presumption applies when "surgical paraphernalia" is unintentionally placed in the patient. Id. In fact, Instruction 402.4c cites Kenyon for that proposition. In Re Std. Jury Instrs., 37 So. 3d at 675 (adopting Instr. 402.4c). Thus, the application of the foreign-body presumption is mandatory when a foreign body exists, in direct contrast to the prerequisites for applying res ipsa loquitur in ordinary negligence cases.

**THIS CASE**

In this case, the drainage tube fragment left inside Mr. Dockswell's body was "discover[ed]" after Mr. Dockswell had a post-operative CT scan, which his physician ordered after Mr. Dockswell complained of lingering pain in his abdomen. Although the trial court erroneously relied on the Dockswells' ability to

identify Nurse Porges as the one who removed the drainage tube post-operatively as a basis for not instructing on the statutory foreign-body presumption, the evidence did not establish that the Dockswells knew when the drainage tube broke, how it broke, or who was responsible for it breaking. Contrary to the Fourth District's and trial court's conclusions that sufficient direct evidence existed to negate the applicability of section 766.102(3)(b) and Instruction 402.4c, the Dockswells' alternative theories of how the drainage tube fragment remained in Mr. Dockswell's body show that uncertainty existed as to how the fragment was actually left inside of his body.

Notwithstanding whether the trial court or Fourth District were correct to conclude that direct evidence of negligence existed, it is clear that the drainage tube fragment was not intended to remain in Mr. Dockswell and was, therefore, a foreign body within the meaning of section 766.102(3)(b). And the injuries caused by its existence were not within the scope of treatment. See Kenyon, 756 So. 2d at 136-37; Borghese, 402 So. 2d at 475. Therefore, as we explained above, the foreign-body presumption and Instruction 402.4c were applicable to the Dockswells' case as a mandatory presumption, unavoidable by evidence. Thus, the jury should have been instructed to determine whether Bethesda Memorial Hospital sufficiently refuted the presumption of negligence, as provided by section 766.102(3)(b). Considering the trial court's failure to properly place the burden on

Bethesda Memorial Hospital to disprove negligence and the verdict at trial in the hospital's favor, we conclude that harmful error occurred and that Bethesda Memorial Hospital cannot establish that there is no reasonable possibility that the failure to give the jury instruction on the statutory foreign-body presumption of negligence contributed to the defense verdict. See Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014).

Further compounding the harmful error, the trial court gave a nonstandard and misleading jury instruction, which stated:

> The existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately cause[d] by a breach of the prevailing professional standard of care by the health care provider.

In Gross v. Lyons, 721 So. 2d 304 (Fla. 4th DCA 1998), the Fourth District Court of Appeal stated, "Reversible error occurs when an instruction is not only an erroneous or incomplete statement of the law, but is also confusing or misleading." Id. at 306; see Holman Live Stock Co. v. Louisville & N.R. Co., 87 So. 750, 752 (Fla. 1921); Wadman v. State, 750 So. 2d 655, 656 (Fla. 4th DCA 1999). At trial, the Dockswells objected to the nonstandard jury instruction, which instructed the jury in the negative: that they were not to presume negligence by the fact that a foreign body was unintentionally left inside Mr. Dockswell. This nonstandard instruction provides a separate basis for reversal because it misled the jury by

- 25 -

instructing them on a negative and was potentially inconsistent with the standard jury instructions on negligence. Bethesda Memorial Hospital cannot establish that there is no reasonable possibility that this error was harmless. Accordingly, for the reasons stated, we conclude that the Dockswells are entitled to a new trial.

## CONCLUSION

For the reasons explained above, the foreign-body presumption of negligence in section 766.102(3)(b), Florida Statutes, as set forth in Florida Standard Jury Instruction 402.4c, establishing a presumption of negligence and shifting the burden to the defendant when a foreign body is discovered inside a patient, was applicable to the Dockswells when they proved that a drainage tube fragment improperly remained inside Mr. Dockswell. Further, the nonstandard jury instruction given at trial, omitting the second portion of section 766.102(3)(b), was misleading and, thus, separately constituted reversible error. Accordingly, we approve of the Third District's decision in Kenyon v. Miller, 756 So. 2d 133 (Fla. 3d DCA 2000), quash the Fourth District's decision in Dockswell, and remand with instructions that a new trial be ordered in which the Dockswells receive the benefit of the foreign-body presumption of negligence in section 766.102(3)(b) as set forth in Florida Standard Jury Instruction 402.4c.

It is so ordered.

LABARGA, C.J., and LEWIS, and QUINCE, JJ., and PERRY, Senior Justice, concur.
POLSTON, J., dissents with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

Because the Fourth District's decision in Dockswell v. Bethesda Memorial Hospital, Inc., 177 So. 3d 270 (Fla. 4th DCA 2015), does not expressly and directly conflict with the Third District's decision in Kenyon v. Miller, 756 So. 2d 133 (Fla. 3d DCA 2000), on the same question of law, this Court does not have the constitutional authority to review this case. See art. V, § 3(b)(3), Fla. Const.

Both district courts determined that foreign-body instructions were not warranted given the circumstances of the cases they were deciding. Specifically, in Dockswell, 177 So. 3d at 273-74, the Fourth District determined that the foreign-body instruction was "neither necessary to enable the jury to resolve the issues in the case nor supported by the facts of the case" because there was "direct evidence of negligence," "[t]here were no genuine doubts surrounding the identity of the allegedly culpable party or the events," and "[t]he use of the foreign body jury instruction would have improperly permitted the jury to disregard the conflicting testimony of the experts." In Kenyon, 756 So. 2d at 137, the Third District determined that the foreign-body instruction was inapplicable because the foreign body left behind "was intentionally placed in Miller's body as part of her

- 27 -

treatment, and like screws, plates, pacemakers, and/or artificial joints was intended to permanently remain in her body." These two holdings regarding the impropriety of the foreign-body instruction in two distinct situations do not conflict.

The fact that the Third District in <u>Kenyon</u> also separately addressed whether a different, res ipsa loquitur instruction should also have been given does not create conflict because the Fourth District in <u>Dockswell</u> never addressed whether the separate res ipsa instruction should have been given. The only instruction that both districts addressed was the foreign-body instruction. And the districts' holdings regarding the foreign-body instruction do not conflict even though the Fourth District in <u>Dockswell</u> incorporated some of the Third District's reasoning regarding the res ipsa instruction into its own analysis of the foreign-body instruction.

Accordingly, because the two decisions do not conflict on the same question of law, this Court is without jurisdiction to review this case. I respectfully dissent.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fourth District - Case No. 4D13-2936

(Palm Beach County)

Geoffrey Bennett Marks of Billbrough & Marks, P.A., Coral Gables, Florida,

for Petitioners

William T. Viergever of Sonneborn Rutter Cooney Viergever Burt & Lury, P.A., West Palm Beach, Florida,

    for Respondent

Roy D. Wasson of Wasson & Associates, Chartered, Miami, Florida,

    for Amicus Curiae Florida Justice Association